IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LANDRY'S LLC AND LANDRY'S TRADEMARK INC. | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | Civil Action No. 4:23-cv-1229 |
| | | *Jury Demand* |
| HOUSTON INTERACTIVE AQUARIUM & ANIMAL PRESERVE, LLC, CRYSTAL COVINO, and AMMON COVINO | § § § § § | |
| *Defendants.* | § § § | |

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs Landry's LLC and Landry's Trademark Inc. ("Landry's") file this Motion for Preliminary Injunction and would show the Court as follows:

I.     INTRODUCTION ...................................................................................................... 1

II.    FACTUAL BACKGROUND ..................................................................................... 2

   A.   The Landry's *Aquarium* brand concept is well known. ..................................... 2

   B.   Landry's uses its Marks and Trade Dress to market the Houston Downtown Aquarium.
        ............................................................................................................................. 2

   C.   Defendants opened a competing aquarium in Harris County with branding intentionally
        similar to Landry's Trade Dress in order to confuse consumers. .................................... 3

   D.   Customers regularly confuse the two aquariums. ............................................................ 4

   E.   School groups often confuse the aquariums. .................................................................... 4

   F.   Media outlets also confuse the Houston Downtown Aquarium and HIA. ...................... 5

   G.   Defendants' infringement tarnishes Landry's Marks because consumers associate Mr.
        Covino's animal trafficking conviction and Defendants' alleged animal cruelty with the
        Houston Downtown Aquarium. ...................................................................................... 6

      1.   Mr. Covino is a convicted felon for animal trafficking. ............................................ 6

      2.   Mr. Covino and his aquariums are accused of animal cruelty. ................................... 7

      3.   Consumers have mistakenly associated Mr. Covino's convictions and allegations
           with the Houston Downtown Aquarium. .................................................................. 8

      4.   Injunctive relief is necessary to stop Defendants' tortious infringement. ................. 10

III.   ARGUMENT & AUTHORITIES ............................................................................. 10

   A.   Element One: Landry's Is Substantially Likely To Succeed On The Merits. .............. 11

      1.   Landry's Has Protectable Trademarks and Trade Dress ........................................... 11

      2.   Consumers are Likely to Confuse Landry's Aquarium with HIA ............................. 12

         ii.    Both Aquarium's Marks Are Similar. ...................................................................... 14

         iii.   Both Aquarium's Offer Similar Products and Services ............................................ 14

         iv.    Both Aquarium's Target The Same Audience. ......................................................... 15

         v.     Similarity of Advertising Media Used ..................................................................... 15

         vi.    Defendants Are Intentionally Profiting Off Of Landry's Marks and Trade Dress ..... 16

         vii.   Consumers Confuse the Houston Downtown Aquarium with HIA ......................... 19

         viii.  Degree of Care Exercised by Potential Purchasers. ................................................. 20

      3.   Preliminary Injunction Element Two: Defendants' Infringement Irreparably Harms
           Landry's. ................................................................................................................ 20

      4.   Preliminary Injunction Element 3: Balance of the Potential Injuries. ..................... 22

      5.   Preliminary Injunction Element 4: Public Interest. ................................................. 23

IV.    SECURITY .............................................................................................................. 23

V.     CONCLUSION ........................................................................................................ 24

# I.  INTRODUCTION

This is a trademark and trade dress case between two competing aquariums in Harris County, Texas. Plaintiffs—Landry's companies—own Houston's Downtown Aquarium, which has become synonymous with high-quality, family-friendly fun ever since it opened two decades ago. Defendants are Ammon and Crystal Covino, and the company they founded and own, the *Houston Interactive Aquarium & Animal Preserve ("HIA")* (which is not in Houston but in Humble). At issue in this Motion is whether the Houston Downtown Aquarium can show it will likely succeed on the merits of its infringement claims, and if so, that HIA's infringement is causing irreparable harm. The answer is yes.

Since opening two years ago, HIA has increasingly used branding and marketing similar to the Houston Downtown Aquarium's. It uses a similar typeface font and color scheme, similar slogans, and uses friendly animal cartoon characters just like the Houston Downtown Aquarium. Both aquariums offer similar goods and services, and both target the same audience: families and school-aged children in the greater Houston area.

This has led to a laundry list of instances in which consumers confuse the two aquariums. School groups regularly buy tickets online to HIA intending to buy tickets to the Houston Downtown Aquarium; the Girl Scouts spent weeks coordinating an event with HIA when they intended to visit the Houston Downtown Aquarium; and reporters and countless online reviews and message board users consistently confuse the aquariums.

But the harm does not end there—HIA's intentional infringement is also tarnishing Houston's Downtown Aquarium. Mr. Covino has been to prison three times for animal welfare violations, the USDA has fined HIA for several animal welfare violations, and HIA

and the Covino family's reputation is generally not good for business. Indeed, Mr. Covino even testified that because consumers are associating the aquariums, a hypothetical customer may refuse to go to the Houston Downtown Aquarium[1]:

> "Are you guys associated with that? I don't want to go there. That sounds -- that place sounds terrible."

Thus, Landry's now asks this Court to enjoin Defendants' infringing conduct to end the continuing irreparable harm Defendants are causing.

## II.    FACTUAL BACKGROUND

### A.  The Landry's *Aquarium* brand concept is well known.

The Houston Downtown Aquarium opened in 2003. It boasts over 500,000 gallons of tanks featuring more than 300 species of aquatic life. Along with the aquarium exhibit, guests can experience games, rides, and exotic animals like a white tiger exhibit.[2]

Since Landry's has exclusively and continuously used its trade dress since 2003, the Houston Downtown Aquarium's overall look and feel have acquired distinctiveness by consumers. Indeed, consumers recognize the trade dress as a designation of the quality sea life attractions, amusement park rides, children's education and entertainment, and food and beverage services offered by Landry's. Landry's registered marks and trade dress (collectively, "*Landry's Trade Dress*") are valuable commercial assets of Landry's.

### B.  Landry's uses its Marks and Trade Dress to market the Houston Downtown Aquarium.

---

[1]  Ex. 4 (Ammon Covino Depo Tr.) at 222:10-13.
[2]  Ex. 1 (Wilson Decl.).

To protect these valuable assets, Landry's owns federally registered trademarks, all of which are inherently distinctive, valid, enforceable, and incontestable (collectively "*Landry's Marks*"). Landry's protects *Aquarium* with the 2,733,641, and 2,754,965 registered marks.[3] The *Downtown Aquarium* and *Aquarium An Underwater Dining Adventure* are protected by the 2,815,523, 2,845,760, and 2,754,755 registered marks.[4]

For almost 20 years, the Houston Downtown Aquarium has paired the Landry's Marks alongside Trade Dress featuring graphics of friendly aquatic creatures, particularly a smiling shark, and uses a playful font, often in a blue and yellow.[5]

Landry's invests heavily in promoting its brand, with a marketing budget exceeding $10 million since 2007.[6] Its marketing and Trade Dress include the friendly aquatic mascots, Sharkey, Jester, Octavius, Herman, Bubbles, and Cecil; a postcard inviting children to "Come play with us!" featuring mascots Octavius, Sharkey, Jester, and Trotter; and a school-related promotional flyer with the mascots Sharkey and Octavius, inviting children and their families to "Support your school with Sharkey".[7]

## C. Defendants opened a competing aquarium in Harris County with branding intentionally similar to Landry's Trade Dress in order to confuse consumers.

Defendants have increasingly and systematically adopted trade dress elements for HIA with a confusingly similar look and feel to the well-recognized Landry's Trade Dress. Defendants chose a similar typeface font and color scheme as the Houston Downtown

---

[3] Ex. 5 (2,733,641 Mark); Ex. 7 (2,754,965 Mark).
[4] Ex. 6 (2,754,755 Mark); Ex. 8 (2,815,523 Mark]; Ex. 9 (2,845,760 Mark).
[5] Ex. 1 (Wilson Decl.) ¶¶ 10-14.
[6] Ex. 1 (Wilson Decl.) ¶ 15.
[7] Ex. 1 (Wilson Decl.) ¶ 12, Ex. A; *id.* at ¶ 13, Ex. B; *id.* at ¶ 14, Ex. C.

Aquarium's.[8] HIA features *Underwater Adventure* on its website and signage which is nearly identical to Landry's catchphrase slogan, *An Underwater Adventure*, that Landry's prominently features.[9] Defendants' branding also uses a similar smiling shark and other friendly animal mascots, just like the Houston Downtown Aquarium has done for years.[10]

**D. Customers regularly confuse the two aquariums.**

HIA's branding is now so similar to Houston Downtown Aquarium's that it confuses many consumers. For example, a Yelp reviewer mistakenly bought an annual pass for the Houston Interactive, believing he was buying an annual pass for the Houston Downtown Aquarium, and was upset because HIA offered no refunds.[11] And as he pointed out, "who would think a place in Humble would be named the 'Houston Aquarium'."[12]

The reverse is true as well. At least one customer on TripAdvisor, who goes by the username "wallybee43," discussed the positive experience she had at the Houston Downtown Aquarium but mistakenly posted it to HIA's TripAdvisor page.[13]

**E. School groups often confuse the aquariums.**

Each year the Houston Downtown Aquarium hosts over a thousand school groups, including over 580 groups so far in 2023. Houston Downtown Aquarium employees, including its Education Manager Stephanie Harbert, began noticing increases instances of school groups showing up at the Houston Downtown Aquarium but with reservations at

---

[8] Exs. 10, 20.
[9] Ex. 1 (Wilson Decl.) at ¶¶ 16-17.
[10] Ex. 10 (HIA website) (HIA-000001-HIA-000010)
[11] Ex. 1 (Wilson Decl.) ¶ 23.
[12] *Id.* at Ex. H.
[13] *Id.* at ¶ 25.

HIA.[14] The frequency of the confusion increased so much that between March and May of 2023, 1 to 2 school groups were confused each week, and to protect its brand, the Houston Downtown Aquarium has had to put in place a policy to accommodate these groups.[15]

Three examples which typify these instances are the Atascocita Springs Elementary School group in February 2023, the Furr High School group in February 2023, and the Berry Elementary School group in April 2023.[16] In each instance Landry's attempted to accommodate the school children by selling discounted tickets to the Houston Downtown Aquarium. Unfortunately, the Atascocita Springs children had to leave because they had already paid for tickets from HIA.[17] Similarly chaperones and parents are frequently confused between HIA and the Houston Downtown Aquarium.[18]

A further instance of confusion occurred when Pasadena Public Library, a group that Landry's works with regularly, arrived at the Houston Downtown Aquarium to pick up donated Adventure Passes for their fundraiser auction. But the library representative had coordinated this with HIA, because she was confused by the @houstonaquariumtx.com email address, which she thought was the URL for the Houston Downtown Aquarium. Given the distance of Pasadena from HIA, the library had no interest in HIA tickets.[19]

## F. Media outlets also confuse the Houston Downtown Aquarium and HIA.

Media organizations including San Antonio's KSAT and Houstonia Magazine have also demonstrated clear confusion between the Houston Downtown Aquarium and HIA

---

[14] Ex. 2 (Harbert Decl.) ¶¶ 7.
[15] *Id.* at ¶¶ 9-10.
[16] *Id.* at ¶¶ 12-15.
[17] *Id.* at ¶ 13.
[18] *Id.* at ¶¶ 16–17.
[19] *Id.* at ¶ 18.

and have further increased the harm to Landry's by publishing articles with incorrect information and links. For example, on January 12, 2023, KSAT published an article featuring the Houston Downtown Aquarium. While the information in the article was accurate, at the end it linked to HIA's website, houstonaquariumtx.com, instead of aquariumrestaurants.com/downtownaquariumhouston.[20]

On February 13, 2023, the Houstonia Magazine published a feature on the Houston Downtown Aquarium. But the article showed clear confusion. Intended to only discuss the Houston Downtown Aquarium, the article referred to exhibits and attractions that exist only at HIA. In the "What are some of the exhibits visitors should see?" section, the text of "Ambassador Animals" hyperlinks to the Houston Downtown Aquarium's website but then in the same sentence the "Animal Encounters" text hyperlinks to HIA's website. In the section titled "Can you find anything to eat at the aquarium?" the article discusses the "Snack Shack" which is a concession stand located at the HIA. The section "How much are tickets?" is taken directly from the HIA's website advertising annual passes which the Houston Downtown Aquarium does not offer.[21]

**G. Defendants' infringement tarnishes Landry's Marks because consumers associate Mr. Covino's animal trafficking conviction and Defendants' alleged animal cruelty with the Houston Downtown Aquarium.**

**1. Mr. Covino is a convicted felon for animal trafficking.**

In 2013, Mr. Covino was sentenced to more than a year in federal prison after pleading guilty to conspiring to illegally transport spotted eagle rays and lemon sharks from

---

[20] Ex. 1 (Wilson Decl.) ¶ 19, Ex. E.
[21] *Id.* at ¶ 21, Ex. E.

the Florida Keys to a Boise, Idaho aquarium.[22] At sentencing, Mr. Covino "was barred from any employment [during the two year period following his release] that involved the possession, display, transportation, exhibition, purchase, or sale of marine life."[23]

But that did not stop Mr. Covino. In February 2016 he "was sentenced to an additional 3 months in prison and a $50,000 fine . . . after agents discovered that he had secretly become involved in the development and construction of two aquarium facilities in the State of Texas, using false name and false claims of employment."[24] And then, "within five days of his release . . . he again became involved in consulting and directing the development, construction, and exhibition details for two new aquarium facilities."[25] For this, he was re-sentenced to eight more months of incarceration.[26]

### 2. Mr. Covino and his aquariums are accused of animal cruelty.

Though Mr. Covino served his time for these charges, government agencies, non-profits, and individual consumers have alleged a laundry list of animal welfare violations. For example, the USDA in June 2022 issued HIA an official warning for four alleged violations of the federal Animal Welfare Act.[27] After the USDA inspected HIA, it issued a report including repeat citations related to "adequate veterinary care."[28]

Individual consumers have also confirmed the animal cruelty they have seen at HIA:

- **TripAdvisor**: "they starve the animals so they can be hungry when you buy food to feed them."[29]

---

[22] Ex. 11 (Covino Depo Ex. 6) at 1-2.
[23] *Id*. at 2.
[24] *Id*.
[25] *Id*.
[26] *Id*.
[27] Ex. 12 (Covino Depo Ex. 8).
[28] Ex. 13 (Covino Depo Ex. 9).
[29] Ex. 14 (TripAdvisor Review, June 3, 2023).

- **<u>Yelp</u>**: "'The only thing missing was Joe Exotic.' My husband summarized our visit the best way possible. I have serious concerns about the welfare of their animals."[30]

- **<u>Google</u>**: "This place is great if you only care about letting your kids grab a random animal without caring about the animal's welfare. If you care about animals at all, you'd find their living situations deplorable."[31]

- **<u>Reddit</u>**: "This is animal exploitation for profit. Not education, not conservation . . . Every animal that I saw was miserable and stressed to the absolute maximum . . . This place does not care about animal welfare at all."[32]

Though these are just a small sample of the negative reviews HIA has earned, PETA has a 21-page fact sheet on the Covino Family detailing documented violations and allegations spanning from 2012 to 2023.[33]

> **3.**   **Consumers have mistakenly associated Mr. Covino's convictions and allegations with the Houston Downtown Aquarium.**

Mr. Covino testified that after creating HIA he decided he did not want to be listed as an owner, because he doesn't "have a good history," has "been to jail," "doesn't want [his] name out there," and because his public ownership would "probably not" be good for business. [34] He even emphatically said, in the context of consumer confusion, "you're [Landry's] going to get all the shit that we [HIA] get: PETA, a convicted wildlife trafficker."[35] He even speculated what a confused consumer may say if they thought the Houston Downtown Aquarium was linked to Mr. Covino and HIA[36]:

---

[30] Ex. 15 at 2 (Yelp Review, March 6, 2022).
[31] Ex. 16 at 2 (Google Review, 9 months ago).
[32] Ex. 17.
[33] Ex. 21 (Covino Depo Ex. 7).
[34] Ex. 4 (Ammon Covino's Deposition) at 8:5-14.
[35] *Id.* at 222:9-10.
[36] *Id.* at 222:10-13.

> "Are you guys associated with that? I don't want to go there. That sounds -- that place sounds terrible."

This tarnishment problem is not hypothetical. Just a few months ago a Univision reporter asked *Landry's* for a statement on whether allegations PETA made against *HIA* were true. Landry's public relations person responded: "This is not a Landry's property."[37]

Users on the Houston subreddit—a news aggregation and discussion website—made the same mistake. In a post titled: "Clear animal abuse/exploitation at Houston Aquarium and Animal Adventure"—posted 2 years ago with 461 "upvotes" and 168 comments—many users thought the post was about the Houston Downtown Aquarium. One user, after reading the allegations against HIA, commented: "I think they should put Tilman Fertitta [Landry's owner] in a cage there as the 'billionaire exhibit', for restaurant patrons to poke and photograph."[38] There was so much confusion that the top two comments to the original post—with 449 and 248 "upvotes" from users—had to clarify that the original post was not about the Houston Downtown Aquarium but about the "Houston Interactive Aquarium," a different place with no affiliation to either the Houston Zoo or Houston Downtown Aquarium.[39]

As Mr. Covino succinctly put the harm of consumer confusion[40]:

---

[37] Ex. 1 (Wilson Decl.) ¶ 20, Ex. F (LDR000031).
[38] Ex. 22.
[39] Ex. 17.
[40] Ex. 4 (Ammon Covino Depo Tr.) at 221: 9-19; 223:16-18.

> Q   If a reporter or PETA or any potential customer thinks that -- thinks that Landry's aquarium --
> A   Yeah.
> Q   -- did something wrong --
> A   I know.  No good.
> Q   -- and -- that doesn't affect you at all?  You don't -- you don't care because that's -- you know, that's not your aquarium, it's --
> A   That's right.
> Q   -- Landry's, right?
> A   That's right.  You -- you --

…

> Get into bed with someone like me, and then you're going to maybe get into bed with issues. I've been to prison.  It's no fun.

**4.      Injunctive relief is necessary to stop Defendants' tortious infringement.**

HIA is open and continues to harm Landry's to this day. Whether a family buys a ticket to HIA instead of the Houston Downtown Aquarium, or someone refuses to visit the Houston Downtown Aquarium because they think it's run by a felon profiting off animals—the consumer confusion is ongoing, irreparable, and needs to stop.

### III.      ARGUMENT & AUTHORITIES

Landry's must establish (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest." *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 536–37 (5th Cir. 2013) (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009). Landry's seeks a preliminary injunction for its claim of trade dress infringement (15 U.S.C. § 1125(a)) and trademark

infringement (15 U.S.C. § 1114) under the Lanham Act. Each element is present here.

## A. Element One: Landry's Is Substantially Likely To Succeed On The Merits.

### 1. Landry's Has Protectable Trademarks and Trade Dress.

A defendant is liable for trademark infringement under the Lanham Act if it "uses in commerce any word, term, name, symbol, or device, … which … is likely to cause confusion, or to cause mistake … as to the origin, sponsorship, or approval of its goods, services, or commercial activities by another person." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008) (alterations in original) (quoting 15 U.S.C. § 1125(a)(1)(A)). "To succeed in a trademark infringement claim, a party must first show that it has a protectable right in the mark and, second, show that there is a likelihood of confusion between the marks." *Id.*

Landry's owns the 2,733,641 and 2,754,965 registered marks, which protect the *Aquarium* mark used for entertainment and restaurant experiences. It also owns the 2,815,523, 2,845,760, and 2,754,755 registered marks. Landry's Marks have all been continuously registered since 2004. Accordingly, they have acquired incontestable status under the Trademark Act. *See* 15 U.S.C. §1065.

The Landry's Trade Dress is distinctive because it has achieved secondary meaning and become famous over more than 20 years of continuous, exclusive use. The factors to consider in determining secondary meaning are: "(1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress."

*Beatriz Ball, L.L.C. v. Barbagallo Co., L.L.C.*, 40 F.4th 308, 317 (5th Cir. 2022) (quoting *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 (5th Cir. 2010).

While a determination on factor (5) is premature since this case was just filed, the remaining factors weigh heavily in favor of finding the Landry's Trade Dress is distinctive: (1) the mark has been used continuously and exclusively by the Landry's at the Houston Downtown Aquarium for over 20 years; (2) the Houston Downtown Aquarium has approximately half a million visiting customers a year, including hundreds of school field trips; (3) Landry's has spent over $10 million investing in the *Aquarium* concept and related Trade Dress; (4) Landry's consistently uses the Landry's Trade Dress in all forms of media and advertising of the Houston Downtown Aquarium; (6) there have been numerous instances of actual customer confusion; and (7) Mr. Covino has deliberately copied Landry's Trade Dress in an effort to attract customers.

Additionally, the registration of Landry's Marks is prima facie evidence of the validity of, ownership of, and exclusive right to use the registered marks. *See* 15 U.S.C. § 1115(a). Accordingly, Landry's Trade Dress is valid and protectable.

### 2. Consumers are Likely to Confuse Landry's Aquarium with HIA.

The Fifth Circuit has enumerated several factors to consider in its "digits of confusion" test in determining whether there is a likelihood of confusion, including: "(1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendant's intent; (7) actual confusion; and (8) degree of care exercised by potential purchasers." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329

(5th Cir. 2008) (quoting *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 170 (5th Cir. 1986)). "The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the ... factors." *Id.* (quoting *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985)). Nevertheless, here almost every factor weighs heavily in favor of Landry's, establishing a clear likelihood of confusion based on Defendants' infringing conduct.

### i. Plaintiff's Mark Is Strong.

Landry's Marks and Trade Dress are strong for the same reason that they have acquired secondary meaning. *See T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 914 (outlining metrics by which to measure trademark's strength). The Landry's Marks and Trade Dress identify the source of the subject services: the Houston Downtown Aquarium itself. *See id.* ("The strength of a trademark in the marketplace is measured by its effectiveness in identifying a source of goods.") (quoting *Quantum Fitness Corp. v. Quantum Lifestyles Ctrs., L.L.C.*, 83 F. Supp. 2d 810, 818–19). Moreover, "[m]arks may be strengthened [in the marketplace] by extensive advertising, length of time in business, public recognition, and uniqueness." *Id.* (alterations in original) (quoting *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988)). Landry's conducts extensive advertising for the Houston Downtown Aquarium using its Marks and Trade Dress. The Houston Downtown Aquarium has been in business for over 20 years, and the trade dress which is consistently used throughout Landry's four aquarium concepts is publicly recognized not only across the state of Texas, but nationwide. Other than the infringing use by the HIA, there is no third-party usage of similar marks, which is another element to

consider in determining mark strength. *See id.* at 914–15.

### ii. Both Aquarium's Marks Are Similar.

"The relevant inquiry is whether, under the circumstances of the use, the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated" or have a common origin. *Elvis Presley Enters.*, 141 F.3d at 201; *see also Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 228 (5th Cir. 2009). The design of Defendants' infringing branding is much like the Houston Downtown Aquarium's trade dress, as both use similar fonts, colors, and friendly aquatic animals including a shark mascot. The *Aquarium* used in the HIA's logo and branding is nearly identical to the *Aquarium* used by the Houston Downtown Aquarium and protected by the registered 2,733,641 mark. HIA also includes the *Adventure* branding protected by the registered 2,754,755 mark. Here prospective purchasers are not only likely to believe the Houston Downtown Aquarium and HIA are associated, many actual consumers, including school children and other online ticket purchasers, are actually confused.[41]

### iii. Both Aquarium's Offer Similar Products and Services.

"The greater the similarity between products and services, the greater the likelihood of confusion." *Elvis Presley Enters.*, 141 F.3d at 202 (quoting *Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980)); *see also T-Mobile*, 991 F. Supp. 2d at 915 (finding that the product similarity factor supports the plaintiff where the parties are direct competitors). HIA is a direct competitor to the Houston Downtown Aquarium

---

[41] Ex. 2 (Harbert Decl.) ¶¶ 9-18.

and offers aquarium services, the exact services provided. Although HIA also offers zoo services, the white tigers and other animals at the Houston Downtown Aquarium serve a similar role. Thus, the products offered by Landry's and Defendants appear to be identical.

### iv. Both Aquarium's Target The Same Audience.

Both the Houston Downtown Aquarium and HIA sell tickets and passes, confusingly both called "Adventure Passes" to their aquariums through their websites. Further, HIA's customers significantly overlap with the Houston Downtown Aquarium, as shown by the many customers confused by the apparent affiliation between the two. The target audience—people who want to experience aquarium activities—is identical, which weighs in favor of Landry's. *See T-Mobile*, 991 F. Supp. 2d at 915 (near complete overlap of consumers of the relevant products found to weigh heavily in favor of plaintiff).

### v. Similarity of Advertising Media Used.

"This particular digit of confusion considers the degree of overlap in the marketing approaches of the plaintiff and the defendant." *Id.* at 920. Like Landry's, Defendants advertise by purchasing google ad words to ensure that their website comes up when consumers enter such terms as "Houston Aquarium," with Defendants going so far as to pay for terms based on the address of the Houston Downtown Aquarium.[42] Beyond this, Covino has testified to minimal advertising. This appears to be an attempt to save money and profit off of the mistaken association with Landry's brand and marketing. For now, Landry's is unaware of any other advertising medium used by Defendants, and so

---

[42] Ex. 3 (Vercher Decl.) Ex. A.

Defendants likely use no media platform that Landry's does not also use. Thus, this factor weighs in favor of Landry's. *See Xtreme Lashes*, 576 F.3d at 229 (5th Cir. 2009) (finding an inference of similar advertising and marketing channels where both companies were engaged in print advertisements, direct mailings, and "internet promotion").

### vi. Defendants Are Intentionally Profiting Off Of Landry's Marks and Trade Dress.

Defendants claim they have not intentionally copied the Landry's Marks or Trade Dress, but the evidence suggests otherwise. First, the Covino's were both aware of the Houston Downtown Aquarium when they opened HIA—Mr. Covino visited three times, including once in 2018 just before creating HIA.[43] He says he was impressed by the Houston Downtown Aquarium's "theming" because "it looks good," "is really impressive," and "they must have spent a hundred million dollars building the joint."[44] He refused to admit he intentionally modeled HIA after the Houston Downtown Aquarium, but said he uses "the same vendor that Landry's aquarium uses" for its products or features, similarly uses the word *Aquarium* in large font with cartoonish animals, and that he designed HIA's look and feel to be "tropical" like the Houston climate, while acknowledging that the Houston Downtown Aquarium is "like going to the Rainforest Café"[45] [a tropical look and feel] and that it probably has the same tropical plants he uses at HIA.[46]

---

[43] Ex. 4 (Ammon Covino Depo Tr.) at 47:4-11.
[44] *Id*. at 117:23-118:13; 119:5-15.
[45] *Id*. 119:10-15.
[46] *Id*. at 120:10-12.

Second, Mr. Covino used "Houston" in HIA's name to intentionally target the same consumers as Landry's. He testified: "when somebody wants to go to the aquarium in Houston, they're going to do exactly this: (typing motion) Houston Aquarium . . . that is the key. It's very simply that. So I said I'll take that domain."[47] Even more telling, Mr. Covino said the purpose of why he wanted "Houston" in the name is to target customers even if they google Houston Aquarium intending to go to Landry's aquarium[48]:

> Q   Uh-huh.  So if someone wants to go to Landry's aquarium, it's in Houston.
> A   Uh-huh.
> Q   They google "Houston Aquarium."
> A   Uh-huh.
> Q   They actually end up at -- at your aquarium.
> A   That -- that could be --
> Q   Is that --
> A   -- the case.
> Q   Is that the -- the -- kind of the purpose or -- or one of the reasons why you wanted "Houston" in the name, to get -- to get --
> A   Yeah.
> Q   -- those customers?
> A   I would --
> Q   Right?
> A   -- want to get anybody that googles that name.

Even more confusing, there is only one aquarium 100% in Houston—the Houston Downtown Aquarium. Although "Houston" does not appear in the Houston Downtown Aquarium's main signage, it has always been known as the Houston Downtown

[47] *Id*. at 49:1-13.
[48] *Id*. at 52:8-24.

Aquarium—it's social media name for Twitter and Instagram is @AquariumHouston, and the aquarium itself is operated by "Houston Aquarium, Inc." HIA, on the other hand, is mainly in Humble, Texas—not Houston.[49] Still, even if HIA "were in Conroe, [Mr. Covino would] still name it the Houston Aquarium because I think that's a good name because Houston's the city that draws people."[50]

Third, Defendants have failed to alter their marketing and advertising approach, even after recognizing that consumers are confused. This is because the confusion benefits HIA to the Houston Downtown Aquarium's detriment. Indeed, Mr. Covino said he has no problem if PETA, Univision, or the public attribute his conviction and the other allegations against the Landry's rather than HIA because that doesn't affect him.[51] Yet if a customer gives HIA a 4-star review intending to leave that review for the Houston Downtown Aquarium, he has an issue with that because "I'm a five-star place."[52]

Finally, Mr. Covino did not do a trademark search, nor did he ask anybody to do a trademark search, before creating HIA.[53] Why not? Because he does not "know anything about trademark law"[54] and based on his 2018 visit downtown, thinks that aquarium is "more of a museum than a zoo [or aquarium]" and is geared for "downtown couples" rather than field trips and children.[55] This could not be further from the truth, showing that Mr. Covino's real intent is to target and take—through deception—the Houston Downtown

---

[49] *Id*. at 39:7-21.
[50] *Id*. at 53:4-7.
[51] *Id*. at 221: 2-222:3.
[52] *Id*. at 229:16-230:21.
[53] *Id*. at 141: 3-14.
[54] *Id*. at 141:15-18
[55] *Id*. at 42:25-43:14; 44:3-19.

Aquarium's current and future customers.

### vii. Consumers Confuse the Houston Downtown Aquarium with HIA.

The actual confusion factor weighs most heavily in favor of Landry's, so much that Landry's believes it would support an injunction on its own. In the Fifth Circuit, **actual confusion is the "best evidence of a likelihood of confusion**." *See Elvis Presley Enters.*, 141 F.3d at 203-04 (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (5th Cir. 1980)); *Xtreme Lashes*, 576 F.3d at 229. "[R]eason tells us that while very little proof of actual confusion would be necessary to prove the likelihood of confusion, **an almost overwhelming amount of proof would be necessary to refute such proof**." *Xtreme Lashes*, 576 F.3d at 229 (emphasis added) (quoting *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 489 (5th Cir. 1971)). Even if initial consumer confusion is quickly dispelled, this initial misunderstanding is evidence of confusion. *Id.* "To show actual confusion, a plaintiff may rely on anecdotal instances of consumer confusion." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 486 (5th Cir. 2004).

Landry's is aware of many instances of actual customers being confused into buying tickets for HIA when they intended to visit the Houston Downtown Aquarium and then arriving at the wrong aquarium. This includes the Atascocita Springs Elementary School group in February 2023, the Furr High School group in February 2023, and the Berry Elementary School group in April 2023. It also includes the home school mom and her children. It also includes the many more instances of chaperones showing up at the Houston Downtown Aquarium with tickets to HIA, and the 1 to 2 school field trips per week that

had made reservations online with HIA but drove and came to visit the Houston Downtown Aquarium.[56]

Landry's is also aware of many media inquiries that have confused the Houston Downtown Aquarium with HIA. Examples of this include the KSAT article, the Houstonia Magazine article, and the inquiry from Univision.[57] Defendants' conduct is causing additional, cumulative damage to Landry's brand, reputation, and goodwill and creates a need for immediate injunctive relief.

### viii.    Degree of Care Exercised by Potential Purchasers.

The degree of care of potential purchasers of Landry's products is not high—the Houston Downtown Aquarium welcomes everyone in the community and is specifically designed to be enjoyed by the general population. Confusion is more likely for inexpensive purchases, and regular price admission to the Houston Downtown Aquarium is only $25.99 (and cheaper for children).[58] *See Sno–Wizard Mfg., Inc. v. Eisemann Prods. Co.*, 791 F.2d 423, 428 (5th Cir. 1986). Similarly, amusement rides at the Houston Downtown Aquarium are all available at less than $10.[59] For this factor, the Houston Downtown Aquarium's customers should be considered ordinary purchasers rather than "informed, deliberative buyers." *See T-Mobile*, 991 F. Supp. 2d at 917 (citing *Oreck Corp.*, 803 F.2d at 173 (5th Cir. 1986)). Thus, this factor supports Landry's.

### 3.    Preliminary Injunction Element Two: Defendants' Infringement Irreparably Harms Landry's.

---

[56] Ex. 2 (Harbert Decl.) ¶¶ 9-17.
[57] Ex. 1 (Wilson Decl.) ¶¶ 19-21.
[58] Ex. 19 (Houston Downtown Aquarium ticket page).
[59] *Id.*

The Fifth Circuit has found that "[a]ll that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion—injury is presumed." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (citation omitted). The Fifth Circuit added that "there seems little doubt that money damages are 'inadequate' to compensate [the owner] for continuing acts of [an infringer]." *Id.* (alterations in original). Other courts in the Southern District of Texas have since found that this presumption is not guaranteed. *See T-Mobile*, 991 F. Supp. 2d at 926-29. But where likelihood of confusion is shown, and the plaintiff also shows it has expended significant time, effort, and expense to create and define its brand, the inability to control the quality or nature of the infringer's products and services cannot be remedied by monetary damages—resulting in irreparable harm. *Id.* at 928-29; *see also Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., L.L.C.*, 83 F. Supp. 2d 810, 831 (S.D. Tex. 1999) ("When a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods or services constitutes an immediate and irreparable injury.") Furthermore, "[a]n injury is also irreparable when compensatory damages are extremely difficult to calculate." *Quantum Fitness*, 83 F. Supp. 2d at 831.

Landry's has established a likelihood of confusion. As in *T-Mobile*, Landry's has expended extraordinary amounts of time, effort, and expense to create and define its brand. As in *T-Mobile*, the "products and services sold are fundamentally the same" and what separates the companies is their "brand identity." *See T-Mobile*, 991 F. Supp. 2d at 929. As in *T-Mobile*, Landry's cannot control the quality or nature of Defendants' products and

services, which have the additional substantial negatives of their affiliation with a felon who has a history of complaints about poor treatment of animals.

Defendants are causing Landry's harm on a continuing and compounding basis. Landry's cannot calculate monetary damages for this conduct. There are continually new instances of confused customers, including those who have arrived at the Houston Downtown Aquarium with unusable annual passes and are genuinely upset about their incorrect purchase. This includes one such instance just this week alone.[60] Simply put, money damages cannot cure the irreparable harm caused by Defendants' infringing actions.

### 4. Preliminary Injunction Element 3: Balance of the Potential Injuries.

The third preliminary injunction factor requires the Court to engage in a traditional balancing test setting plaintiff's irreparable harm against the defendant's hardship. *Sirius Computer Sols., Inc. v. Sparks*, 138 F. Supp. 3d 821, 842 (W.D. Tex. 2015). Here, the balance of the equities heavily favors granting an injunction. Landry's will suffer tremendous irreparable harm through loss of goodwill and reputation, as well as loss of customers, if Defendants are permitted to continue their unlawful conduct. Similarly, there will be continuing harm to consumers who continue to buy the incorrect tickets because of Defendants' infringing conduct. By contrast, the harm to Defendants will be minimal since Defendants have no right to use Landry's Marks and Trade Dress. Defendants hardship is limited to changing HIA's name and the branding used on its website, Facebook page, and business registration to a non-infringing name that is unlikely to cause confusion and to

---

[60] Ex. 2 (Harbert Decl.) ¶ 11.

cease using marketing that incorporates Landry's Trade Dress. This weighs in Landry's favor.

**5.    Preliminary Injunction Element 4: Public Interest.**

"The public interest is always served by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks." *Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 832 (S.D. Tex. 1999); *see also T-Mobile*, 991 F. Supp. 2d at 929. Thus, protecting Landry's Marks and Trade Dress will not disserve the public interest. Instead, if the Court does not grant injunctive relief, then the public harm and confusion will continue.

## IV.    SECURITY

Under Rule 65(c), the party seeking injunctive relief must "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). In determining the bond amount, the Court may consider the strength of the party's likelihood of success on the merits and the opposing party's potential loss if the injunction is granted. *See Petro Franchise Sys., LLC v. All Am. Properties, Inc.*, 607 F. Supp. 2d 781, 801 (W.D. Tex. 2009) (concluding that a "relatively low bond amount" was appropriate). Here, Landry's has shown a substantial likelihood of success on the merits and that Defendants will only suffer minimal loss if the injunction is granted. The core of the relief sought by Landry's is that Defendants must change the name to one that is not confusingly similar to Landry's Marks. The financial inconvenience is minimal. Accordingly, Landry's is willing to post a bond, but believes that a modest bond amount is appropriate.

## V.    CONCLUSION

For these reasons, Landry's requests that this Court enter all relief that is just and proper, grant the application, and enter a preliminary injunction ordering as follows:

- Prohibiting Defendants from making further use of the Infringing Marks and infringing trade dress;
- Prohibiting Defendants from marketing, offering, providing products or services with the Infringing Marks or other marks that are confusingly similar to Landry's Trademarks and Landry's Trade Dress;
- Requiring Defendants to recall from all trade and distribution channels, any products, packaging, advertising, and promotional materials bearing the Infringing Marks or Infringing Trade Dress;
- Requiring Defendants to cause the destruction of all products and materials subject to this injunction; and
- Prohibiting Defendants from maintaining or pursuing trademark registrations or registration applications for the Infringing Marks and Infringing Trade Dress.

Dated: July 7, 2023

Respectfully submitted,

**AHMAD, ZAVITSANOS & MENSING, PLLC**

*/s/ John Zavitsanos*
John Zavitsanos, attorney-in-charge
Texas Bar No. 22251650
Federal ID No. 9122
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062
jzavitsanos@azalaw.com

OF COUNSEL:
Alexander M. Dvorscak
Texas Bar No. 24120461
Federal ID No. 3610557
Harrison Scheer
Texas Bar No. 24110333
Federal ID No. 3556683
AHMAD, ZAVITSANOS & MENSING, PLLC
1221 McKinney St., Suite 2500
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062
advorscak@azalaw.com
hscheer@azalaw.com

Richard D. Rivera
Smith Gambrell & Russell, LLP
50 N. Laura Street, Suite 2600
Jacksonville, FL 32202
Telephone: (904) 598-6157
Facsimile: (904) 598-6257
rrivera@sgrlw.com

Jason P. Blair
Smith, Gambrell & Russell, LLP
1055 Thomas Jefferson St, NW, Suite 400
Washington, DC 20007
Telephone: (202) 263-4301
Facsimile: (202) 263-4310
jblair@sgrlaw.com

**ATTORNEYS FOR PLAINTIFFS
LANDRY'S LLC AND LANDRY'S
TRADEMARK INC.**

## CERTIFICATE OF CONFERENCE

  I hereby certify that on June 28, 2023 counsel for the parties discussed settlement options and did not reach a resolution. Defendants maintain their opposition to entry of a preliminary injunction and Plaintiffs maintain their belief that an injunction is necessary and proper.

*/s/ Alexander M. Dvorscak*
Alexander M. Dvorscak

## CERTIFICATE OF SERVICE

  I hereby certify that on July 7, 2023 a true and correct copy of the foregoing was duly served via CM/ECF on all counsel of record.

  Michael J. Smith
  The Fowler Law Firm PC
  3301 Northland Suite 101
  Austin, Texas 78731
  *Counsel for Defendants*

*/s/ Alexander M. Dvorscak*
Alexander M. Dvorscak
