

HARRISON SCHEER
DIRECT 713.600.4992
MAIN 713.655.1101
FAX 713.655.0062
HSCHEER@AZALAW.COM

April 3, 2024

***Via E-File***
The Honorable Andrew M. Edison
United States Courthouse
601 Rosenberg, Seventh Floor
Galveston, Texas 77550

Re: *Landry's LLC and Landry's Trademark Inc. v. Houston Interactive Aquarium & Animal Preserve, LLC, Crystal Covino, and Ammon Covino*; Cause No. 4:23-cv-1229

Dear Judge Edison:

The Parties jointly write the Court to state their respective position on whether the Parties are complying with all provisions of the settlement agreement. This letter is organized by settlement provision. Each section details the quote of the agreement, the Parties' agreed facts on compliance of that term, and then the Parties' respective position on whether the Parties are complying with that term (if applicable).

**Agreement #1: "Adventure Pass"**

- Agreement: "'Adventure Pass' will be deleted from the defendants' website immediately. If there's any physical signs within the facility, those will be -- those will also be removed immediately." (Ex. 1. 2023-09-20 Mediation Transcript 4:7-10).

- Agreed Facts:

    1. "Adventure Pass" was not fully deleted from the HIA website by the Court's deadline.

    2. "Adventure Pass" no longer appears on HIA's website.

    3. HIA still displays physical "Adventure Pass" signage, including at its ticket booth, as of noon today.

- Contentions:

    1. Defendants assert that they used good faith in making the required changes to the HIA website. When Defendants realized they would not be able to

    complete those changes by the midnight deadline, they disabled the HIA website. Unfortunately, and unbeknownst to Defendants, the initial disabling of the website failed to remove the pages located under the online.houstonaquariumtx.com subdomain making those pages still accessible through Google search results. As soon as they were informed that those pages were still accessible, they disabled them as well. Defendants exercised good faith in trying to conform with the Court's order.

2. Plaintiffs counter Defendants' above assertion that with regard to the online.houstonaquariumtx.com websites, "they disabled them as well." Plaintiffs have visited the online.houstonaquariumtx.com websites on at least a daily basis since March 26th, and those sites have remained accessible to this day.

**Agreement #2: "Underwater Adventure"**

- Agreement: **"**The term 'Underwater Adventure' will also be immediately removed from the defendants' website. And if there's physical signs at the park, those will be immediately removed too." (Transcript 4:11-14).

- Agreed Facts:

    1. "Underwater Adventure" no longer appears on HIA's website.

    2. HIA still displays physical "Underwater Adventure" signage, including at its ticket booth, as of noon today.

**Agreement #3: "disclaimer"**

- Agreement: **"**The defendants are going to put on their website a disclaimer that will say 'not affiliated with Landry's Downtown Aquarium' . . . When the disclaimers are posted on the defendants' website, they'll be posted as an image, not coded, and no metadata in the disclaimer." (Transcript 4:15-21).

- Agreed Facts:

    1. Defendants included a disclaimer on its website but as of the Court's deadline, the disclaimer was posted as a text and not as an image on the online.houstonaquariumtx.com pages.

2. At some point after the Court's midnight deadline, Defendants changed the disclaimer from text to image on HIA's *main* website.

3. As of noon today, Defendants' website domains that starts with "***online***.houstonaquariumtx" still have the disclaimer as text, and not an image. *See*, e.g., https://online.houstonaquariumtx.com/package/main/Admission

- Point of contention

1. Defendants assert that they used good faith in making the required changes to the HIA website. Throughout the day, Defendants were adding image-based disclaimers to its various webpages. When Defendants realized they would not be able to complete all changes by the midnight deadline, they disabled the HIA website. Unfortunately, and unbeknownst to Defendants, the initial disabling of the website failed to remove the pages located under the online.houstonaquariumtx.com subdomain making those pages still accessible through Google search results. It was those pages that included the disclaimer as text rather than as an image. As soon as they were informed that those pages were still accessible, they disabled them as well. Defendants exercised good faith in trying to conform with the Court's order.

2. Plaintiffs counter Defendants' above assertion that with regard to the online.houstonaquariumtx.com websites, "they disabled them as well." Plaintiffs have visited the online.houstonaquariumtx.com websites on at least a daily basis since March 26th, and those sites have remained accessible to this day.

3. Defendants have been informed by counsel of the need to change the disclaimer on the online.houstonaquariumtx pages to be images rather than text immediately.

**Agreement #4: remove blue Aquarium signage**

- Agreement: "As to physical signs, any physical sign, there's a few of them at defendants' park that have the blue "Aquarium." Those will be immediately taken down." (Transcript 5:7-9).

- Agreed Facts:

1. As of 12pm today, Defendants still use the original logo at HIA, including at its ticket booth.

**Agreement #5: new font and color**

- Agreement: "The defendants are going to come up with a new logo that will go on their website. They're going to provide a new font and change the color of "Aquarium." They're going to use good faith. They're going to provide that to the defendant [sic] before it goes live on their website. If the defendant [sic] doesn't agree with the new logo, they will use good faith and propose an alternative logo to the defendants."

- Agreed Facts:

1. HIA currently uses the following logo on its website. HIA thinks this new logo complies with the settlement agreement.




2. Landry's does not think the new logo complies with the settlement agreement. Landry's proposed the following logos to HIA for HIA to use.

HOUSTON
INTERACTIVE
ANIMAL PRESERVE & AQUARIUM

HOUSTON
INTERACTIVE
ANIMAL PRESERVE & AQUARIUM

HOUSTON
INTERACTIVE
ANIMAL
PRESERVE
& AQUARIUM

- Landry's Position: HIA's new logo still breaches the parties' settlement agreement. As the Court noted last week, HIA's new logo somehow appears even more similar to Plaintiff's mark, despite a change in font and color.

  Under well-recognized principles of trademark analysis, the test is not whether the marks can be distinguished in a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression that confusion as to the source of the services offered under the respective marks is likely to result. *See Midwestern Pet Foods, Inc. v. Societe des Produits Nestle S.A.*, 685 F.3d 1046, 1053, 103 USPQ2d 1435, 1440 (Fed. Cir. 2012). As such, marks must not be dissected into individual components. *Sun-Fun Products, Inc. v. Suntan Research & Development Inc.*, 656 F.2d 186, 213 U.S.P.Q. 91 (5th Cir. 1981) (the test is "overall impression conveyed by the mark and not a dissection of individual features").

  This understanding of recognized trademark analysis should provide context to Judge Sheldon's order with respect to Defendants changing to a new font and color, in which he stated, "They're [the Defendants are] going to use good faith." Given the nearly unlimited number of new fonts and colors for Defendants to choose from, it does not stand to reason that Judge Sheldon's intent was for Defendants to choose the next most similar font and color to what Plaintiff has been using. Yet that is precisely what the Defendants are proposing. Specifically, Defendants have traded in a typeface font that closely resembles the typeface font used in the majority of letters in Plaintiff's mark for a typeface font that closely resembles the typeface font used in the letter "R" of "AQUARIUM" in Plaintiff's mark. Put plainly, out of the millions of fonts available for Defendant to select, it is highly unlikely that they happened to choose the *other* font used in Plaintiff's mark out of sheer coincidence.

Given that Defendants then chose a new color that is even *closer* to the color used in Plaintiff's mark, still retains the color gradient effect, stacks two words in large font over a banner containing words in smaller font in a manner very similar to Plaintiff's mark, it is not surprising that Your Honor has stated that Defendants' newly-proposed mark seems even more similar to Plaintiff's mark when analyzed as a whole.

The purpose of "[t]hey're going to use good faith" in the mediation transcript is not for the Defendants to simply skirt around the periphery of confusing similarity, but for the Defendants to come up with a new logo that is overall easily distinguished from Plaintiff's mark. Good faith requires adopting a font and color scheme that alters the overall impression of the mark, and not just a minor change to individual features. *Id.* at 190. See also *Estate of P.D. Beckwith, Inc., v. Commissioner of Patents*, 252 U.S. 538, 545-46, 40 S. Ct. 414, 64 L. Ed. 705 (1920).

- Defendants' Position: Defendants are considering those logos, but a final decision has not been reached on whether Plaintiffs' proposed logos are acceptable. Defendants do agree with Landry's that, " marks must not be dissected into individual components. *Sun-Fun Products, Inc. v. Suntan Research & Development Inc.*, 656 F.2d 186, 213 U.S.P.Q. 91 (5th Cir. 1981) (the test is "overall impression conveyed by the mark and not a dissection of individual features"). Yet that is exactly what Plaintiffs are asking this Court to do. At this point, their argument is based on Defendants use of the new font as Plaintiffs claim it is similar to the font used in the "R" of Aquarium in their mark. In other words, Plaintiffs are asking the Court to dissect the mark into individual features. Defendants assert that no ordinary consumer would be confused about the source.




Respectfully and jointly submitted,

**AHMAD, ZAVITSANOS & MENSING, PLLC**

*/s/ Harrison Scheer*
John Zavitsanos, attorney-in-charge
Texas Bar No. 22251650
Federal ID No. 9122
Harrison Scheer
Texas Bar No. 24110333
Federal ID No. 3556683
1221 McKinney Street, Suite 2500
Houston, Texas 77010
Telephone: (713) 655-1101
Facsimile: (713) 655-0062
jzavitsanos@azalaw.com
hscheer@azalaw.com

OF COUNSEL:

Jason P. Blair
Smith, Gambrell & Russell, LLP
1055 Thomas Jefferson St, NW, Suite 400
Washington, DC 20007
Telephone: (202) 263-4301
Facsimile: (202) 263-4310
jblair@sgrlaw.com

**ATTORNEYS FOR PLAINTIFFS LANDRY'S LLC AND LANDRY'S TRADEMARK INC.**

**THE FOWLER LAW FIRM PC**

/s/ Michael J. Smith
Michael J. Smith
Texas State Bar No.24037517
3301 Northland Drive, Suite 101
Austin, Texas 78731
Telephone: 512.441.1411
Facsimile: 512.469.2975
msmith@thefowlerlawfirm.com

**ATTORNEYS FOR DEFENDANTS HOUSTON INTERACTIVE AQUARIUM & ANIMAL PRESERVE, LLC, CRYSTAL COVINO, AND AMMON COVINO**

**CERTIFICATE OF SERVICE**

    I hereby certify that on April 3, 2024 a true and correct copy of the foregoing was duly served via CM/ECF on all counsel of record.

    Michael J. Smith
    The Fowler Law Firm PC
    3301 Northland Suite 101
    Austin, Texas 78731
    *Counsel for Defendants*

    */s/ Harrison Scheer*
    Harrison Scheer